IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FIVERR INTERNATIONAL LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 13-1721 (GMS) |
| ) | |
| GIGZ, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

I. **INTRODUCTION**

On November 13, 2013, Fiverr International Ltd. ("Fiverr") filed suit against Gigz, Inc. ("Gigz") raising federal and common law service mark infringement claims, federal and common law unfair competition claims, a deceptive trade practices claim, and a federal cyberpiracy claim. (D.I. 1.) Presently before the court is Fiverr's motion for a preliminary injunction. (D.I. 8.) In this motion, Fiverr requests an order "preliminarily enjoining Defendant Gigz, Inc.'s unlawful use of Plaintiff's federally registered service marks GIG® and GIGS®, or any confusingly similar and infringing marks or names, including but not limited to GIGZ, Gigz, Inc., and the domain name gigz.com, in connection with the operation of an online marketplace for sellers and buyers of goods and/or services, and in connection with any services related thereto." For the following reasons, the court denies Fiverr's motion for preliminary injunction.

II. **BACKGROUND**

In February 2010, Fiverr launched its web-based platform, www.fiverr.com, which allows individuals to offer and take advantage of freelance services by registering as users on the website

and paying Fiverr's fees. (D.I. 1 at ¶ 7-8; D.I. 9 at 2-3.) In connection with its business, Fiverr uses service marks including GIG® and GIGS®. (*Id.* at 3.) On November 3, 2010, Fiverr filed an application with the United States Patent and Trademark Office ("USPTO") to register GIG® and GIGS® under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a).[1] (*Id.*; D.I. 13 at 2.) On March 2, 2012, Fiverr amended its applications to proceed only under Section 44(d) based on Israeli applications for GIG® and GIGS®. (D.I. 9 at 3-4; D.I. 14, Ex. F.) Based on these Israeli certificates of registration, Fiverr obtained a federal service mark registration under Registration Number 4220143 for GIG® on October 9, 2012 and under Registration Number 4270491 for GIGS® on January 8, 2013. (D.I. 9 at 3; D.I. 13 at 3.)

The Defendant, Gigz, operates a website, www.gigz.com, which "enables people to connect around small jobs, volunteer and charitable work or hobbies, which are performed offline without any further involvement from the company." (D.I. 13 at 3.) Gigz has been using GIGZ on its website and as a domain name since August 1, 2012.[2] (*Id.*) On October 22, 2012, Gigz filed an application with the USPTO to register GIGZ as a standard mark under Section 1(a) of the Lanham Act. (*Id.*) The USPTO issued an office action February 25, 2013 refusing registration of GIGZ based on the likelihood of confusion with Fiverr's mark GIGS®. (D.I. 9, Ex. J.) Subsequently, Gigz decided not to pursue its trademark application because it acknowledged that "gig" and "gigs" were generic or descriptive, and thus not entitled to trademark protection. (D.I. 13 at 4.) On August 22, 2013, Gigz filed a Petition for Cancellation before the Trademark Trial and Appeal Board for cancellation of Fiverr's Registration Numbers 4220143 and 4270491. (*Id.*

---

[1] On February 14, 2011, the USPTO issued an office action for each application in which it refused registration of each on the grounds that the specimens that Fiverr had provided were unacceptable as evidence of actual service mark use and failed to show proper use of the applied-for marks in the sale or advertising of the services. (D.I. 14, Ex. D.) On September 2 and 5, 2011, the USPTO issued a final office action for each application in which it refused to register GIG® and GIGS® for the same reasons detailed in its February 14, 2011 communications. (*Id.* at Ex. E.)

[2] Gigz appears to have renewed the domain name gigz.com through February 23, 2016. (D.I. 9 at Ex. F.)

at 4.) The cancellation proceeding is currently stayed pending resolution of the instant matter before this court. (*Id.*)

## III. LEGAL STANDARD

Although granting a preliminary injunction is entirely within the court's discretion, "[p]reliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted). A party seeking a preliminary injunction must establish four factors: (1) the likelihood of success on the merits of the underlying litigation, (2) whether irreparable harm is likely if the injunction is not granted, (3) the balance of hardships as between the litigants, and (4) factors of the public interest. *Winter v. NDRC, Inc.*, 555 U.S. 7, 20 (2008). The court must balance all four factors, but the court may grant the preliminary injunction where "the weakness of the showing regarding one factor is overborne by the strength of the others." *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990). If, however, the likelihood of success on the merits and probability of irreparable harm if relief is not granted are not established, then an injunction cannot issue. *Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*, 857 F. Supp. 2d 489, 499 (D. Del. 2012) (citing *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523 (3d Cir. 1994)).

## IV. DISCUSSION

In order to establish a likelihood of success on the merits for its service mark infringement claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and common law, Fiverr must show that: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or

services."[3] *Freedom Card, Inc. v. J.P. Morgan Chase & Co.*, 432 F.3d 463, 470 (3d Cir. 2005) (citation omitted). Courts analyze common law service mark infringement claims using the same factors. *See A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 294 (3d Cir. 1986); *Acxiom Corp. v. Axiom, Inc.*, 27 F. Supp. 2d 478, 507 (D. Del. 1998).

Federal registration of a mark constitutes *prima facie* evidence of the registered mark's validity, the registrant's ownership of the mark, and the registrant's exclusive right to use the registered mark. *See* 15 U.S.C. §§ 1057(b). This presumption of validity extends only to "the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate." *Id.*; *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1396 (3d Cir. 1985) (citation omitted). A defendant can overcome this presumption by demonstrating that the service mark in question is either generic or merely descriptive without proof of secondary meaning. *See Honickman*, 808 F.2d at 297; *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 859 (3d Cir. 1992).

As Fiverr correctly argues, (D.I. 9 at 7-8), its service marks are presumptively valid by virtue of being federally registered and the burden of rebutting this presumption falls upon Gigz. Gigz argues in response that Fiverr's marks are generic because "[t]he general public does not understand or believe that the term 'gig', or its plural, refers to Fiverr's services since the prime significance of these terms are short-term jobs or small services offered in exchange of money." (D.I. 13 at 10.) Thus, Gigz contends, these terms must "remain available to anyone in this country to use in denoting services related to short-term jobs." (*Id.*) The court concludes that Gigz is correct.

---

[3]  As the Third Circuit has explained, "service marks, which are used to identify the source of services, are entitled to the same legal protection as trademarks, which are used to identify the source of goods. Although technically distinct, the terms are often used interchangeably, with no significant legal consequences." *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 855 (3d Cir. 1992).

The primary significance test for genericness asks whether in the "minds of the consuming public" a term primarily signifies the product or the producer. *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 192 (3d Cir. 2008); *Dranoff-Perlstein*, 967 F.2d at 859; *Honickman*, 808 F.2d at 292-93, 299-300. A term that primarily signifies the product is generic and cannot be afforded service mark protection. *Honickman*, 808 F.2d at 292-93. This is because fairness to competitors demands that markholders not be allowed to protect generic terms that are more appropriately used to describe an entire class or genus. *Id.* at 304 ("Courts refuse to protect a generic term because competitors need it more to describe their goods than the claimed markholder needs it to distinguish its goods from others.")

Here, the term "gig" and its plural "gigs" describe an entire class of services, namely those that are short-term and discrete. As Gigz points out, multiple dictionaries define "gig" as a descriptor for a job or service that is temporary in nature and completed in return for money. (D.I. 13 at 9; D.I. 14, Ex. H.) Also, as Gigz highlights, the use of "gig" and "gigs" in common parlance indicates that it signifies the entire group of services in question here. Indeed, numerous mainstream magazines and publications use "gig" to denote services that are freelance, part-time one-offs. (D.I. 13 at 9; D.I. 14, Ex. I.) Furthermore, many websites in the business of facilitating such services use both "gig" and "gigs" "to advertise their services as online platforms listing postings for short-term jobs or small services." (D.I. 13 at 9; D.I. 14, Ex. J.)

Fiverr does not deny the uses of "gig" and "gigs" in dictionaries, other websites, and numerous magazines that Gigz points out. Rather, Fiverr alleges that it has "extensively and continuously used and advertised" GIG® and GIGS® in connection with its services for more than three and a half years, and has spent about $3.8 million in order to market these marks as source-identifiers for its marketplace. (D.I. 9 at 4.) As a result, Fiverr claims, "the American public has

5

come to know and recognize the marks and to associate them exclusively with Fiverr." (*Id.*) Fiverr further argues that "there are many alternatives that can be used to describe the services offered by Gigz." (D.I. 17 at 5 (listing "jobs", "work exchange", "freelance", "buy and sell", "for hire", and "service seller").) The inquiry is not whether Fiverr has spent considerable sums marketing its marks or whether another term can be found for others to use once Fiverr monopolizes "gig" and "gigs", however. The question at hand is whether one can fairly conclude that "gig" and "gigs" primarily signify Fiverr itself. Fiverr's bald assertions that the public knows and recognizes the marks as Fiverr's are unavailing. The evidence here indicates that the court must answer in the negative as other courts have when faced with similar terms. *See E.T. Browne*, 538 F.3d at 192 ("'Cola' is generic because it refers to a product, whereas 'Pepsi Cola' is not generic because it refers to the producer."); *Dranoff-Perlstein*, 967 F.2d at 860 (Explaining that "injury" in the context of personal injury law "is 'so commonly descriptive of the name of the service that we should consider it generic.'"); *Honickman*, 808 F.2d 291 (Concluding that the plaintiff had not met its burden of proving that "chocolate fudge" as applied to diet soda was not generic for the purposes of its entitlement to a preliminary injunction.); *see also Xtreme Caged Combat v. ECC Fitness*, No. 12-cv-3855, 2013 U.S. Dist. LEXIS 162055, *20-21 (E.D. Pa. Nov. 14, 2013) (Consulting dictionary definitions in concluding that "[t]here exists sufficient evidence for a juror to find that 'Xtreme Caged Combat' is generic....[T]he words in Plaintiff's mark are closely associated with the activities promoted by or trained for at Plaintiff's business.")

Because the court concludes that Fiverr's service marks, "gig" and "gigs", are not valid, Fiverr cannot prevail on either of its federal and common law service mark infringement claims.[4]

---

[4] Since Fiverr's service marks are not valid, Fiverr also cannot prevail on its unfair competition, deceptive trade practices, and federal cyberpiracy claims. Each of those claims requires a valid mark in order to be sustained.

Accordingly, Fiverr has failed to establish a likelihood of success on the merits and an injunction cannot issue here.

## V. CONCLUSION

For the reasons stated above, the court will deny Fiverr's Motion for a Preliminary Injunction, (D.I. 8).

Dated: May 23, 2014

CHIEF, UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FIVERR INTERNATIONAL LTD., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GIGZ, INC., )<br>)<br>Defendant. )<br>) | C.A. No. 13-1721 (GMS) |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that Fiverr's Motion for a Preliminary Injunction, (D.I. 8), is DENIED.

Dated: May 23, 2014

_____
CHIEF, UNITED STATES DISTRICT COURT